# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Anastasia Dawne Roberts

v.

Christopher Ira Roberts

August 13, 1999

Case No. CH98-786

By Judge William H. Ledbetter, Jr.

Grounds of divorce and child custody are the primary controversies in this divorce case.

### Facts

The parties were married on August 16, 1997, two months after the birth of their child, Ira Nicole.

For several months prior to their marriage and for the first several months of their marriage, Mr. and Mrs. Roberts lived with Mr. Roberts' mother in Oak Grove Subdivision. In October of 1997, they moved to Steeplechase Apartments. Mr. Roberts worked for Collins Construction Company, while Mrs. Roberts cared for the child. For a while, she worked part time in the evenings in a video store.

The marriage was rocky, at times stormy. The parties testified at length about incidents that occurred, especially in 1998. As would be expected, their versions of those events differ.

On September 20, 1998, Mr. Roberts took the child and moved back to his mother's house. Mrs. Roberts remained at Steeplechase until the lease expired and then moved to her parents' house on Forest Grove Drive.

Mr. Roberts filed a petition for custody in the juvenile court. On October 15, 1998, that court awarded temporary custody of Ira Nicole to Mr. Roberts,

with supervised visitation to Mrs. Roberts. A final hearing was scheduled, but before that hearing could be held, Mrs. Roberts filed this divorce suit.

The parties reached an agreement regarding custody of their child. This court incorporated that agreement in a *pendente lite* order. By the terms of that agreed order entered on January 7, 1999, the parents share custody, alternating on a weekly basis.

Since then, a number of events have occurred that bear on the issues before the court.

First, Mr. and Mrs. Roberts attempted reconciliation in January 1999. They did not live together, but they "dated" and, at least according to the testimony of Mrs. Roberts, engaged in sexual relations.

Second, Mrs. Roberts left her parents' home. Her whereabouts after that are not clear, except that for a while she stayed at a motel; she lived with Michael David Keys and his fiancee in Unionville; she lived with a girlfriend; she slept on a loading dock behind Breezewood Shopping Center; and at some point, she returned to the home of her parents.

Third, Mrs. Roberts struck up a relationship with Scott S. Elder. They spent the night together a number of times and engaged in sexual relations.

Fourth, during the time Mrs. Roberts lived outside her parents' home, her weeks with the child under the custody arrangement were truncated or omitted altogether. During those periods, Mr. Roberts was the *de facto* custodian, and his mother was Ira Nicole's primary caretaker while Mr. Roberts was at work.

Fifth, in March 1999, Mrs. Roberts discovered that she was pregnant. She is unsure whether Mr. Roberts or Mr. Elder is the father. Most recently, she has strengthened her belief that the child was conceived in January while she was "dating" her husband.

Now, Mr. Roberts continues to reside with Ira Nicole, his mother, and his brother in Oak Grove Subdivision. Mrs. Roberts has obtained employment in Fredericksburg as a live-in caretaker for an elderly couple. She declines to reveal her address for fear that Mr. Roberts will harass her as he has in the past.

Mr. Roberts is 21 years old; Mrs. Roberts is 19.

## Status of the Litigation

As noted above, the parties began litigation for custody in the juvenile court shortly after their separation. On October 15, 1998, that court awarded temporary custody to Mr. Roberts and scheduled a final hearing.

Mrs. Roberts instituted this divorce suit on December 3, 1998, and scheduled a *pendente lite* custody hearing for December 21, 1998, thereby

divesting the juvenile court of further jurisdiction in the matter. Mr. Roberts was served with process on December 4, 1998.

Before the *pendente lite* hearing, the parties reached an agreement and presented it to the court on December 21, 1998. On January 7, 1999, the court entered the agreed *pendente lite* order. The order provides for joint custody, with physical custody alternating between the parties on a weekly basis. The arrangement was conditioned on each party living with his or her parents. Ira Nicole would not be in the presence of the parties' "boyfriends or girlfriends."

Mr. Roberts filed an answer on December 21, 1998. He filed a pleading seeking leave to file a late cross-bill. On December 28, 1998, without obtaining leave of court, he filed a cross-bill alleging Mrs. Roberts' adultery with "Jed Mitchell and various other persons." Mrs. Roberts responded to the cross-bill and also moved the court to dismiss the cross-bill as untimely. (Neither party has formally sought a ruling on the cross-bill issue, and no proposed order has been entered either to allow the cross-bill or to strike it.)

Depositions were taken on April 30, 1999, May 27, 1999, and June 25, 1999. On July 20, 1999, the court conducted an *ore tenus* hearing for the purpose of allowing the parties to supplement the depositions on the issue of custody. The court took the case under advisement. Counsel submitted memoranda. This opinion addresses all issues.

### Divorce

Both parties have expended considerable time and energy attempting to prove fault grounds for divorce. Mrs. Roberts' bill of complaint seeks a divorce based on cruelty. Mr. Roberts' cross-bill alleges cruelty and adultery.

Cruelty may be established by any conduct that renders marital cohabitation unsafe or that involves danger to life, limb, or health. Physical violence and reasonable apprehension of bodily harm may be components of cruelty, but mental anguish and unrelenting neglect and humiliation may also be as bad as physical wounds in such degree as to amount to cruelty. Cruelty may consist of a single act of atrocious misconduct that causes serious bodily harm, but generally, it consists of successive acts of ill treatment. *Sollie v. Sollie*, 202 Va. 855 (1961); *DeMott v. DeMott*, 198 Va. 22 (1956). However, a divorce based on cruelty grounds cannot be granted merely upon evidence of marital disharmony, angry words, and annoyances. *Sprott v. Sprott*, 233 Va. 238 (1987); *Coe v. Coe*, 225 Va. 616 (1983); *Beers v. Beers*, 198 Va. 682 (1957).

In sum, in order to prove divorce grounds of cruelty, the misconduct must be serious, such that it amounts to extreme cruelty that is entirely subversive

of family relations, rendering family life intolerable. See Swisher, Diehl, and Cottrell, *Virginia Family Law* (2d ed. 1997) § 7-3.

Using these criteria, neither party has established cruelty grounds of divorce. There is some evidence of angry verbal confrontations, rudeness, vulgarity, snatching and slapping, pushing and shoving, and other sallies of passion. However, these incidents were infrequent, even isolated, occurrences that did not cause bodily harm and did not make family life well nigh intolerable for either party. At other times, they were affectionate, cooperative, considerate, and caring. In essence, these parties were quite young and very immature. They were teenagers with relatively few financial resources who were trying, unsuccessfully, to live together and raise a child. Neither of them engaged in such misconduct toward the other that amounts to cruelty as grounds for divorce.

It is noteworthy that after all these episodes had occurred, and the parties had separated, they "dated" and engaged in sexual relations. Even if that activity does not constitute condonation, it is relevant to a consideration of the parties' real view of the severity of their earlier tribulations.

Adultery must be proved by clear and convincing evidence. Although several names were mentioned in the evidence, Mr. Roberts failed to present any evidence of adulterous conduct regarding any of those men except Scott S. Elder.

Clearly, Mrs. Roberts engaged in a post-separation adulterous affair with Mr. Elder in February or March of 1999. She admits it; Mr. Elder testified about it; and both of Mrs. Roberts' parents testified about incriminating remarks that Mrs. Roberts made when she discovered that she was pregnant.

However, Mrs. Roberts' adultery with Mr. Elder has never been properly pleaded. See Rule 2:13. Mr. Roberts now requests that the court allow him to amend his cross-bill "to conform to the evidence." This case does not involve a non-prejudicial amendment to an existing pleading so that it will conform to the evidence. That would have been the situation if, for example, Mr. Roberts had misidentified his wife's paramour in his pleading. Here, no cross-bill has been properly filed. It is too late for the court to permit an untimely filing over Mrs. Roberts' objection.

The parties have not lived separate and apart for a year. They separated in September 1998. They interrupted their period of separation in January 1999. Thus, their marriage cannot be dissolved on no-fault grounds.

For these reasons, neither party is entitled to a divorce, *a mensa et thoro* or *a vinculo matrimonii*. Accordingly, the suit will be dismissed.

## Custody

Even where neither party is entitled to a divorce, the court is empowered to make such orders concerning custody of minor children as it deems appropriate. Virginia Code § 20-107.2. In this case, Ira Nicole's custody is in need of determination.

The court will not repeat the evidence regarding custody adduced in three sets of depositions and the *ore tenus* hearing. For a good part of her young life, Ira Nicole has lived with her father at the home of her paternal grandmother. Since the separation, she has lived continuously at that place, with the same people, in the same familiar environs. She is well cared for. Mrs. Roberts has had the child with her often, as discussed above, but there have been many occasions, until recently, when she could not exercise her alternative-week privileges because of her living arrangements and related difficulties.

In determining custody, the court must give primary consideration to the best interests of the child. Virginia Code § 20-124.2. The best interests of Ira Nicole require that she be in the custody of her father, Mr. Roberts. In reaching that conclusion, the court has considered all the factors enumerated in Virginia Code § 20-124.3.

The court is mindful that Mrs. Roberts' life seems to have become more stable in recent weeks. She has exercised her alternate-week privileges on a regular basis. She has suitable living arrangements. Therefore, the court awards visitation to Mrs. Roberts in the same manner and for the same times set forth in the *pendente lite* order of January 7, 1998.

The court is also mindful that the alternate-week arrangement may be only temporary. The child is two years old. At some point, an appropriate court may have to decide that it is best for the child to spend more time with one parent, for the sake of stability. No ruling is necessary on that issue at this time.

## Equitable Distribution

Because the court finds that the parties are not entitled to a divorce, it has no authority to decree a distribution or division of the parties' property. Virginia Code § 20-107.3(A).

## Child Support

Mr. Roberts has failed to present sufficient evidence of his income and expenses to enable the court to make an award of child support. In any event,

that issue will be transferred to the juvenile court for such future proceedings as the parties may deem necessary.

## *Conclusion*

The court will decree that neither party is entitled to divorce for the reasons explained; that Mr. Roberts will be awarded sole custody of Ira Nicole; that Mrs. Roberts will have visitation privileges as described above; that the court has no authority to make determinations regarding equitable distribution; that all matters pertaining to custody, visitation, and support will be transferred to the juvenile court; and this suit will be dismissed.